**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DRYWALL ELEMENTS, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00537- |
| v. | § | CAN |
| | § | |
| EDWARD WOLFF & ASSOCIATES, | § | |
| LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Edward Wolff & Associates, LLC and Mark Wolff's ("Defendants") Motion to Dismiss Plaintiff's Third Amended Complaint [Dkt. 15]. Having considered Defendant's Motion, Plaintiff's Response [Dkt. 18], Defendants' Supplement to the Motion to Dismiss [Dkt. 35], and Plaintiff's Response to the Supplement [Dkt. 39], and all other relevant filings, the Court finds Defendants' Motion to Dismiss [Dkt. 15] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

## RELEVANT BACKGROUND

On July 13, 2021, Plaintiff Drywall Elements, LLC ("Plaintiff") filed its original complaint against Defendants Edward Wolff & Associates, LLC ("EWA") and Mark Wolff (collectively "Defendants") [Dkt. 1]. On October 6, 2021, Plaintiff filed its Third Amended Complaint – the live pleading – asserting claims for violations of the Texas Deceptive Trade Practices Act ("DTPA"), breach of contract, violation of the Texas Theft Liability Act ("TTLA"), breach of fiduciary duty, conversion of property, and fraud and fraudulent inducement [Dkt. 13]. On September 2, 2021, this cause was referred to the undersigned for all pretrial proceedings [Dkt. 7]. Thereafter, on November 3, 2021, U.S. District Judge Sean D. Jordan entered an Order of

Reference, referring this case to the undersigned for any and all further proceedings, including trial, entry of final judgment, and all post-judgment hearings, in accordance with 28 U.S.C. § 636(c) and the consent of the Parties [Dkt. 20].[1]

***Plaintiff's Live Pleading – Third Amended Complaint***

In the living pleading Plaintiff alleges, on February 19, 2020, Plaintiff and EWA entered into an agreement ("Contract") whereby EWA would collect the past due account owed by Schmid Construction, Inc. ("Schmid"), for construction work Plaintiff performed for Schmid [Dkt. 13 at 3]. Schmid owed Plaintiff a past due amount of $43,948.26, which Defendants negotiated to a settlement of $30,000. Under the Contract, "upon collection of the Balance from Schmid, Defendants would retain a fee in exchange for their services and transmit the remaining funds to Plaintiff" [Dkt. 13 at 4]. The Contract entitled EWA to retain $6,000 as its fee and obligated to remit $24,000 to Plaintiff [Dkt. 13 at 4]. In June 2020, EWA sent Plaintiff a letter acknowledging "that Defendants had retained the $24,000 belonging to Plaintiff. The Defendants' letter further proposed to remit only half of the $24,000, to Plaintiff, over twelve monthly payments" [Dkt. 13 at 4]. Plaintiff avers it "unequivocally rejected this attempt" by Defendants to alter the terms of the Contract [Dkt. 13 at 4]. On December 10, 2020, Plaintiff served a demand letter on EWA, informing EWA that it would file suit if the money owed was not settled within 60 days, which is the statutory notice period for filing a claim under the DTPA [Dkt. 13 at 4]. Defendants did not pay the settlement amount in the demand letter, and Plaintiff filed the instant lawsuit. To date, EWA has not remitted to Plaintiff the $24,000 owed to it under the Contract.

---

[1] On October 26, 2021, the Parties filed their 26(f) report of attorney conference [Dkt. 17]. Defendants questioned the Court's subject matter jurisdiction, alleging lack of diversity because "the true amount in controversy is less than $75,000.00," citing Plaintiff's pre-suit demand letter requesting $28,000 [Dkt. 17 at 3]. At the Rule 16 management conference, the Parties disagreed about whether the amount in controversy exceeds $75,000. The Court ordered supplemental briefing on the amount in controversy and the Court's jurisdiction based on diversity [Dkt. 24]. By separate Order, the Court determined the amount-in-controversy is satisfied, resolving doubts as to the Court's subject matter jurisdiction [Dkt. 30]. The Court now addresses Defendants' Rule 12(b)(6) grounds for dismissal.

Plaintiff further alleges Defendants engaged in deceptive solicitations and enticements in the course of their dealings, which induced Plaintiff to enter into the Contract [Dkt. 13 at 4].  More specifically, Plaintiff claims that "[i]n its solicitation, EWA held itself out as a law firm, and Defendant Mark Wolff held himself out as an attorney. Neither was true. Mark Wolff is not an attorney, and EWA is not a law firm" [Dkt. 13 at 3] (internal citation omitted).  Plaintiff alleges that "Wolff knowingly and intentionally used EWA & Associates, LLC to perpetrate an actual fraud against Plaintiff by intentionally misleading Plaintiff to believe that Mark Wolff is an attorney and EWA & Associates, LLC is a law firm, in order to induce Plaintiff to enter into the Contract" [Dkt. 13 at 5].  Defendants allegedly acted "with dishonest purpose and intent to deceive, by inducing Plaintiff to enter into the Contract, so that Defendants could collect $30,000 from Schmid with no intention of remitting the amount due" under the Contract [Dkt. 13 at 5].  Further, Plaintiff alleges Wolff has direct control over EWA as the sole shareholder and "directly and personally benefitted from [ ] actual fraud as he illegally retained $24,000" unremitted to Plaintiff which made the funds "available for his personal use" [Dkt. 13 at 5].

Plaintiff seeks relief of at least $24,000.00 in economic damages for unremitted payment, statutory damages of at least $48,000 for violations of the DTPA, exemplary damages for "malicious conduct" under TEX. BUS. & COM. CODE § 41.003, pre- and post-judgment interest, attorney's fees, and costs [Dkt. 13 at 9-10].[2]

---

[2] Plaintiff seeks attorney's fees pursuant to the DTPA, TEX. BUS. & COM. CODE § 17.45; for breach of contract, TEX. CIV. PRAC. & REM. CODE § 38.001; for violations of the TTLA, TEX. CIV. PRAC. & REM. CODE § 134.005(b); and for fraud pursuant to TEX. BUS. & COM. CODE § 17.50(d) [Dkt. 13 at 9].  Defendant urges Plaintiff's claims for attorney's fees should be dismissed because: (1) the contract between the Parties does not provide for attorney's fees; (2) Plaintiff has no claim under the DTPA for statutory attorney's fees; (3) Chapter 38 does not allow LLCs to collect attorney's fees as the prevailing party in a breach of contract action; (4) Plaintiff has no claim under the TTLA; and (5) Plaintiff has not stated a fraud claim because TEX. BUS. & COM. CODE §17.50(d) is part of the DTPA and is not a separate cause of action [Dkt. 25 at 5-6, 8-9].  The Court's earlier opinion considering the amount in controversy determined that Plaintiff cannot seek attorney's fees for breach of contract from EWA as an LLC because the version of Chapter 38 in force at the time does not authorize recovery of attorney's fees from an LLC [Dkt. 25 at 8].  *See* TEX. CIV. PRAC.

***Defendants' Motion to Dismiss***

On October 20, 2021, Defendants moved to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim [Dkt. 15].  On November 1, 2021, Plaintiff filed a response [Dkt. 18]. No reply was filed.  After the Court's ruling regarding subject matter jurisdiction, on April 21, 2022, Defendants filed a motion for leave to file an amended motion to dismiss [Dkt. 33], along with a proposed amended motion [Dkt. 35].  Upon review, and after conferring with the Parties by telephonic status conference on May 3, 2022, the Court denied Defendants' motion for leave to file an amended motion to dismiss, instead construing the filing as a supplement to the already pending motion to dismiss (hereinafter, "Supplement") [Dkt. 38].  On May 9, 2022, Plaintiff filed a response to Defendants' Supplement [Dkt. 39].  The Motion to Dismiss is ripe for consideration.

Defendants specifically urge Plaintiff fails to state a claim for the following reasons: (1) Plaintiff's claim is solely for breach of contract,; (2) any TTLA claim must fail because Plaintiff voluntarily transferred the funds to EWA, gave effective consent to EWA to possess the funds in dispute per the Contract, and never demanded return of the funds; (3) failure to allege facts that either EWA or Wolff owe a fiduciary duty to Plaintiff; (4) failure to allege that EWA or Wolff unlawfully possessed the disputed funds necessary to state a conversion claim; and (5) failure to allege EWA and Wolff "knowingly" made false statements that they would recover funds and distribute those to Plaintiff [Dkt. 15 at 2-4].  Defendants also move to dismiss Plaintiff's request for attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, the DTPA, the TTLA, and for common law fraud [Dkt. 15 at 5-6].

---

& REM. CODE § 38.001 (amended Aug. 31, 2021); *see also Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2020 WL 2610908, at *26 (E.D. Tex. May 22, 2020) (collecting cases).  The Court does not again address this issue.  Defendants' arguments as to attorney's fees under the DTPA and TTLA hinge entirely on whether Plaintiff is the prevailing party on these claims.  Having found that Plaintiff has stated a claim for violation TTLA, such fee basis should remain; and as Plaintiff should be permitted to replead its claim for violation of the DTPA, the Court declines to further address this basis.

## LEGAL STANDARD

### Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. FED. R. CIV. P. 12(b)(6).  The claims stated must include enough factual allegations "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  To assess the sufficiency of a complaint, the Court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief."  *Iqbal*, 556 U.S. at 681.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555.

### Consideration of Documents Attached to Live Pleading/Motion

When evaluating a motion to dismiss, a district court may generally not "go outside the complaint."  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  However, the Court may consider any documents attached to a motion to dismiss if they are referred to in the Plaintiff's live pleading and are central to Plaintiff's claim(s).  *Id.*  "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the

plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

Two exhibits are attached to the live pleading: Exhibit A, the agreement between Plaintiff and Defendant EWA, dated February 19, 2020 ("Contract") [Dkt. 13-1]; and Exhibit B, a letter dated June 2, 2020 from Defendant EWA to Plaintiff making an offer of settlement ("Settlement Offer") [Dkt. 13-2]. Defendants attach a pre-suit demand letter, dated December 10, 2020, sent by Plaintiff to EWA as an exhibit to the Motion to Dismiss [Dkt. 15-1]. Plaintiff raises concerns about the Court's consideration of the pre-suit demand letter. Plaintiff argues Defendants proffer the pre-suit demand letter as documentary evidence to support of dismissal of certain claims "solely on the basis of factual disputes" [Dkt. 39 at 3]. Defendants object to Plaintiff's Exhibit B as not relevant and prohibited by Rule 408 of the Federal Rules of Evidence, which prohibits use of compromise offers and negotiations as evidence [Dkt. 15 at 5]. Defendants do not move to strike Exhibit B; instead, they argue for dismissal of any part of "Plaintiff's claim relying on Exhibit 'B' for failure to state a viable cause of action" [Dkt. 15 at 5]. No objection is raised to Exhibit A.

The Court declines to convert the instant motion to one for summary judgment under Rule 56 [Dkt. 18 at 2]. It finds that both Exhibit B and the pre-suit demand letter may be appropriately considered in resolving the instant Motion to Dismiss. The pre-suit demand letter is explicitly referenced in the live pleadings, and the Court may therefore consider it to the extent the document is used to show the presence or absence of a legal claim.[3] *See DAC Surgical Partners,*

---

[3] The live pleading includes the following allegations referring to the demand letter attached to the Motion:
> On December 10, 2020, Plaintiff served a demand letter upon Defendants' attorney. The demand letter informed Defendants that Plaintiff would pursue this litigation, including claims under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), if Defendants failed to resolve Plaintiff's claims within 60 days of that notice.

[Dkt. 13 at 4].

*P.A v. United Healthcare Servs., Inc.*, No. CIV.A. H-11-1355, 2011 WL 3841946, at *2 (S.D. Tex. Aug. 30, 2011). Similarly, to the extent the settlement communication is offered to establish a legal dispute exists between the Parties, the Court may consider it. To be clear, the Court may not and does not consider it for proof of liability, invalidity of, or amount of a disputed claim. *See Nat'l Presort, Inc. v. Bowe Bell + Howell Co.*, 663 F. Supp. 2d 505, 508 (N.D. Tex. 2009) (rejecting a request to strike a letter offered at the motion to dismiss stage).[4]

## ANALYSIS

Defendants move to dismiss each of Plaintiff's causes of action for failure to state a claim. The Court first addresses Plaintiff's claims for breach of contract, violation of the TTLA, conversion, and breach of fiduciary duty, and then turns to address the fraud related claims (violations of the DTPA, fraud and fraudulent inducement).[5]

### Breach of Contract

Defendants urge Plaintiff has failed to state a valid contract claim against Wolff because he is not party to the Contract [Dkt. 15 at 2-3, 5]. No argument for failure to state a contract claim can be found as to EWA [*See* Dkt. 15 at 6-7]. To succeed on a breach of contract claim under

---

[4] The court in *National Presort* declined to strike a settlement offer when considering a motion to dismiss, finding the offer established that a legal dispute existed between the parties, which is not a purpose prohibited by Rule 408:

> Further, Rule 408 goes on to expressly state that such evidence is not excluded under 408 if it is offered for purposes other than proof of liability for, invalidity of, or amount of a disputed claim. *See*, FED. R. EVID. 408(b). Here, the evidence is offered for a purpose other than those forbidden by Rule 408. It is offered to establish the existence of a case or controversy—a legitimate threat of litigation—between the parties. Therefore, Rule 408 does not foreclose admissibility of the evidence.

*Nat'l Presort, Inc.*, 663 F. Supp. 2d at 508.

[5] Defendants broadly assert Plaintiff's allegations amount to nothing more than a breach of contract case and its damages; however, Defendants do not address or brief in any way the applicability of the independent injury or economic loss doctrines to Plaintiff's claims. *See, e.g., Firequip, Inc. v. Precision Frac, LLC*, 17-cv-73, 2018 WL 6186000 (W.D. Tex. Jan. 10, 2018). "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Sloggett v. LaCore Enters.*, No. 06-20-00057, 2021 WL 5609982, at *6 (Tex. App.—Texarkana 2021, pet. denied) (quoting *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam)).

Texas law, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 500 (5th Cir. 2018) (quoting *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).  Plaintiff clearly alleges facts for each element of a breach of contract claim as to EWA: that a valid contract exists, that Plaintiff performed under the Contract, breach of the Contract by failing to remit funds collected from Schmid, and that, as a result, it sustained damages of $24,000.00, the amount collected by EWA.

***Piercing the Corporate Veil –Liability for Breach of Contract and Other Claims as to Wolff***

As to Wolff, EWA is a limited liability company organized in the State of Texas, and Mark Wolff is its sole member.  The allegations against Wolff arise from his role as the sole manager of EWA.  Plaintiff claims Wolff acted to his personal benefit by making the withheld funds available for his personal use [Dkts. 13 at 5; 39 at 17-18].  More specifically, Plaintiff argues Wolff is personally liable for EWA's contractual obligations because he used the LLC to perpetrate actual fraud "by intentionally misleading Plaintiff to believe that [ ] Wolff is an attorney and EWA & Associates, LLC is a law firm, in order to induce Plaintiff to enter into the Contract" [Dkt. 13 at 4-5].[6]

Texas law enforces contracts but disfavors extra-contractual remedies, such as allowing creditors of Texas business entities to sue their owners.  *Belliveau v. Barco, Inc*., 987 F.3d 122 (5th Cir. 2021).  Under Texas law, "a member or manager [of a limited liability company] is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation,

---

[6] Admittedly, Plaintiff's live pleading does not state specific allegations as to Wolff's conduct for each cause of action, instead pleading generally that all Defendants committed the acts giving rise to each claim.  Plaintiff imputes liability to Wolff for all of its claims against EWA's based on its veil piercing theory.

or liability under a judgment, decree, or order of a court." TEX. BUS. ORGS. CODE § 101.114. "Due to the limited liability that corporations and LLCs offer to their owners, a plaintiff seeking to impose individual liability on an owner must 'pierce the corporate veil.'" *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013).

Piercing the corporate veil is not an independent cause of action, but rather a vehicle to impose liability on a corporate officer for wrongdoing. To hold Wolff liable for EWA's liabilities, Plaintiff must show that Wolff used EWA "to (1) 'perpetrate an actual fraud' (2) primarily for [Wolff's] 'direct personal benefit.'" *See Belliveau*, 987 F.3d at 128-29 (quoting *In re Ritz*, 832 F.3d 560, 566 (5th Cir. 2016)); *see also* TEX. BUS. ORGS. CODE § 21.223 (Texas law "does not prevent or limit the liability" of an LLC member "if the obligee demonstrates that the [member] caused the [LLC] to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit" of the member).[7] As the Fifth Circuit noted, "[p]iercing the corporate veil is not a cumulative remedy for creditors of corporate or other legal entities in Texas; that theory does not make owners of such entities codefendants for every breach of contract case. It is a remedy to be used when the actions of the entity's owner amounting to 'actual fraud' have rendered the entity unable to pay its debts." *Belliveau*, 987 F.3d at 132.

Defendants admit that Wolff is the "managing member" and "at all times" acted "in said capacity" [Dkt. 15 at 2]. Defendants argue however that because the veil piercing allegations are

---

[7] Given its broad scope, Section 21.223 applies to both contractual claims and ancillary torts. *See Menetti v. Chavers*, 974 S.W.2d 168, 174 (Tex. App.—San Antonio 1998, no pet.) (applying to DTPA, fraud, and negligence claims); *Plas–Tex v. Dalton Jones*, No. 3-99-00286, 2000 WL 632677, at *4 n.9 (Tex. App.—Austin 2000, pet. denied) (applying Section 21.223 to fraud and breach of fiduciary duty claims); *Aluminum Chemicals (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 68 (Tex. App.—Texarkana 2000, no pet.); *Harco Energy, Inc. v. Re–Entry People, Inc.*, 23 S.W.3d 389, 397 (Tex. App.—Amarillo 2000, no pet.) (fraud); *Formosa Plastics Corp., U.S.A. v. Kajima Int'l Inc.*, 216 S.W.3d 436, 462 n.8 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied) (which assumed, without deciding, that Art 2.21 [former 21.223 before codified in the Texas Business Organizations Code] applied to a related fraud claim). Federal courts likewise have held that Section 21.223 applies to both contract and related tort claims for veil-piercing purposes. *See, e.g.*, *U.S. ex rel. CMC Steel Fabricators, Inc. v. Harrop Construction*, 131 F.Supp.2d 882, 894 (S.D. Tex. 2000).

"couched in only general terms and fails to provide any factual basis for the claims against [ ] Wolff individually," including that he personally and directly benefited from keeping the unremitted funds owed to Plaintiff, Plaintiff's claims against Wolff must be dismissed [Dkt. 15 at 2].[8]

The fact that Wolff was not a party to the contract and was acting within the scope of his role as member of the LLC does not alone preclude his liability.  *See, e.g.*, *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 674 (W.D. Tex. 2019) ("a corporate agent may still be liable for his own personal tortious activity, even if acting within the course of his corporate agency, and that applies to breach-of-fiduciary duty claims.").  However, as set forth above, piercing the corporate veil in cases based on claims of breach of contract must be supported by facts showing actual fraud.  In this case, all of Plaintiff's causes of action relate to or arise from the contractual obligations allegedly incurred by Defendants.  Therefore, to the extent Plaintiff seeks to hold Wolff liable on a veil piercing theory on any of its claims, Plaintiff's ability to pierce the corporate veil is governed by Section 21.223, and Plaintiff must satisfy its stringent standards.  At present, Plaintiff has failed to do so and thus fails to state a claim against Wolff under a veil piercing theory.[9]  Plaintiff offers conclusory accusations lacking factual support as to Wolff and further lumps all Defendants together, failing to make specific allegations in connection with each

---

[8] Defendants also allege Plaintiff named Wolff in the complaint "in bad faith" in violation of Rule 11, the DTPA, and the TTLA, and that Wolff will be moving for sanctions by separate motion [Dkt. 15 at 5].  At present, no motion for sanctions has been filed.  Defendants' bad faith allegations are not relevant here because "the Court is not in a position to dismiss an entire lawsuit at this stage based on Defendants' impassioned arguments and accusations."  *See M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 805 (S.D. Tex. 2010) ("It is the Court's task to adjudicate this case neutrally.").

[9] Texas law permits Plaintiff to pursue intentional tort claims against Wolff in his capacity as an individual without having to "pierce" the corporate veil of EWA.  *Bates Energy Oil & Gas*, 361 F. Supp. 3d at 664-73; *see Transcor Astra Grp. S.A. v. Petrobas Am., Inc*., —— S.W. 3d ——, No. 20-0932, 2022 WL 1275238, at *11 (Tex. Apr. 29, 2022) ("the fact that an individual was acting in a corporate capacity does not prevent the individual from being held personally—or 'individually'—liable for the harm caused by those [tortious] acts"); *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) (same).  At present, per the discussion *infra* regarding Rule 9, to the extent Plaintiff seeks to assert an individual liability claim, which is wholly unclear, Plaintiff fails to plead with particularity the tortious or fraudulent conduct of EWA or Wolff.

of its claims as to Wolff.  *See In re Antone's Recs., Inc.*, 445 B.R. 758, 787 (Bankr. W.D. Tex. 2011); *Gurganus v. Furniss*, No. 3:15-CV-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) (citing *Iqbal*, 556 U.S. at 678) ("Plaintiff fails to allege [] facts giving rise to any individual's liability on behalf of any entity. In addition to being conclusory and formulaic, this type of group pleading fails to meet the pleading requirements of Federal Rule of Civil Procedure 8.").[10]

### *Texas Theft Liability Act – Civil Theft*

The TTLA provides a private cause of action for victims of theft.  Under the TTLA, a person who commits theft is liable for damages resulting from that theft, as defined by the Texas Penal Code.  TEX. CIV. PRAC. & REM. CODE § 134.003(a).  The Texas Penal Code, section 31.03, states in relevant part:

> (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
>
> (b) Appropriation of property is unlawful if:
> (1) it is without the owner's effective consent[.]

TEX. PENAL CODE § 31.03(a)–(b)(1).  "[T]o succeed on a TTLA claim, the plaintiff must show that the defendant intended to unlawfully appropriate the property or obtain the services in question." *Natour v. Bank of Am., N.A.*, No. 4:21-CV-00331, 2022 WL 2252590, at *6 (E.D. Tex. June 22, 2022) (citing *Winkley v. State*, 123 S.W.3d 707, 713 (Tex. App.—Austin 2003, no pet.)).  "Even in cases where there exists no evidence directly indicating an intent to steal property, it has been held that such intent may be inferred from the words, actions, or conduct of the actor." *Id.* (quoting *Winkley*, 123 S.W.3d at 713 (internal citations omitted)).  "The intent to deprive contemplated

---

[10] Group pleading also does not satisfy Rule 9(b) for those claims that fall under the heightened pleading standard. *See Hidden Values, Inc. v. Wade*, No. 3:11-CV-1917-L, 2012 WL 1836087, at *4 (N.D. Tex. May 18, 2012) (quoting *Coates v. Heartland Wireless Comms., Inc.*, 26 F.Supp.2d 910, 915 (N.D. Tex. 1998)) ("When multiple defendants are alleged to have committed fraudulent acts, a party claiming fraud 'must plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant; the plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.'").  Plaintiff may not lump Defendants together in asserting its claims.

under § 31.03 must exist at the time of taking or exchange." *In re Powers*, 261 F. App'x 719, 722 (5th Cir. 2008) (citing *Reed v. State*, 717 S.W.2d 643, 645 (Tex. App.—Amarillo 1986, no writ)). A plaintiff can recover actual damages, court costs, and reasonable and necessary attorney's fees, and additional damages of up to $1,000.  TEX. CIV. PRAC. & REM. CODE § 134.005(a)(1), (b).[11]

Defendants urge Plaintiff's TTLA claim should be dismissed because Plaintiff gave effective consent to EWA to possess the settlement funds per the Contract, and that a voluntary transfer cannot constitute theft under the TTLA [Dkt. 15 at 3-4].  Plaintiff rejoins that it is sufficient to allege Defendants unlawfully appropriated its property, specifically any money it is rightfully owed and which Defendants have not yet remitted [Dkt. 18 at 9-10].  "'Effective consent' includes consent by a person legally authorized to act for the owner."  TEX. PENAL CODE § 31.01(3). Consent is not effective if "induced by deception or coercion."  *Id.* § 31.01(3)(A).[12]  Here, Plaintiff alleges EWA is wrongfully withholding the net funds collected under the Contract that are rightfully owed to it.  *See, e.g.*, *McIntosh v. Wiley*, No. CIV A 504-CV-120, 2006 WL 3691109, at *9 (S.D. Tex. Dec. 11, 2006) (analyzing at summary judgment the "effective consent" element of the TTLA) ("unlike in the prototypical 'theft' scenario, Plaintiffs paid Defendant Brands

---

[11] Notably, "a Texas Theft Liability Act claim is not subject to the heightened pleading standards or Rule 9(b)." *UnitedHealthcare Ins. Co., Inc. v. Murphy*, No. 5-18-CV-347-DAE, 2019 WL 12536545, at *8 (W.D. Tex. Aug. 20, 2019) (citing *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.*, No. H–11–2086, 2012 WL 302805, at *5 (S.D. Tex. July 24, 2012)).

[12] "Deception" is defined by the Texas Penal Code as:
> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
> (C) preventing another from acquiring information likely to affect his judgment in the transaction;
> (D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE § 31.01(1).

willingly. However, as was established in the fraud discussion [ ] there is evidence in the record to support Plaintiffs' allegation that Defendant Brands made material misrepresentations with the goal of inducing Plaintiffs into relying on such for his own gain. If Plaintiffs transferred the relevant funds to Brands' bank account in reliance on those misrepresentations, it would follow that Brands 'appropriated' the funds without Plaintiffs' 'effective consent,' thereby rendering the appropriation 'unlawful.'").  Plaintiff has sufficiently alleged EWA wrongfully appropriated the settlement funds without effective consent and with intent to deprive at this the motion to dismiss stage.  *See NetVet Grp. v. Fagin*, No. 3:10-CV-1934-BH, 2011 WL 6220348, at *8 (N.D. Tex. Dec. 14, 2011) ("Regarding its theft claim, Plaintiff alleges that [Defendant] neither had a right to possess the funds intended for its subcontractors, nor had its effective consent because 'any consent obtained for the draw request, or continuing consent to the draw request while the draw request was being approved or after the draw request was executed, was induced by deception and/or non-disclosure on the part of [Defendants].' . . . Plaintiff has nudged its theft claim across the line from conceivable to plausible. The claim is therefore not subject to dismissal under Rule 12(b)(6).").

### *Conversion*

Under Texas law, "[c]onversion is the wrongful exercise of dominion or control over the property of another in denial of, or inconsistent with, the other's rights in the property.'"  *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2019 WL 5189200, at *10 (E.D. Tex. Oct. 15, 2019) (quoting *Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 40 (Tex. App.—Dallas 2003, no writ)).  To prevail on a claim of conversion, the plaintiff must show:

> (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property.

*One Place Cap. v. Oakes*, No. 4:18-CV-829-SDJ-KPJ, 2021 WL 4024450, at \*4-5 (E.D. Tex. Aug. 2, 2021) (citing *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 888 (Tex. App.—Dallas 2009, no pet.)), *report and recommendation adopted*, No. 4:18-CV-829-SDJ-KPJ, 2021 WL 3931125 (E.D. Tex. Sept. 1, 2021).   Conversion claims for money must meet additional requirements.   "An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money."   *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012) (quoting *Hous. Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)).   "Actions for conversion of money are available in Texas only where 'money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'"   *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (quoting *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied)).

Defendants move to dismiss the conversion claim on the grounds "the parties to the contract (Plaintiff and EWA) agreed that the funds collected from the third party would be possessed by EWA" [Dkt. 15 at 4].   Plaintiff rejoins that it has plausibly alleged a conversion claim by pleading that Defendants have an obligation to deliver the funds collected to Plaintiff, which they continue to hold without authorization [Dkt. 18 at 6].   Like the TTLA claim, Plaintiff pleads it demanded the funds be returned and EWA refused to do so.   This is sufficient to state a claim for conversion against EWA, even if EWA lawfully possessed the funds at some point.   *See Lopez v. Lopez*, 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.) (citing *Presley v. Cooper*, 284 S.W.2d 138, 141 (1955); *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, pet. denied)) ("If the defendant originally acquired possession of the plaintiff's property

legally, the plaintiff must establish that the defendant refused to return the property after the plaintiff demanded its return.").  Taking Plaintiff's allegations as true at the motion to dismiss stage, Plaintiff alleges facts to support a conversion claim.  *See NetVet Grp.*, 2011 WL 6220348, at *9 ("for the same reasons that Plaintiff has stated a theft claim, Plaintiff has stated a claim for conversion. Whether or not the money constitutes specific chattel subject to conversion is a fact specific inquiry which is more appropriate at the summary judgment stage. Plaintiff's conversion claim survives dismissal at the motion to dismiss stage.").

### Breach of Fiduciary Duty

In Texas, a fiduciary relationship exists when "the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship."  The relationship may be formal or informal.  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).  A formal fiduciary relationship "arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers."  *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.)).  "An informal fiduciary relationship may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one."  *Jones*, 196 S.W.3d at 449 (citing *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005)).  "To impose an informal fiduciary relationship in a business transaction, a special relationship of trust and confidence must exist prior to, and separate from, the parties' agreement."  *Id.* (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)).  "The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff

or benefit to the defendant." *Navigant Consulting, Inc.*, 508 F.3d at 283 (quoting *Jones*, 196 S.W.3d at 447).

Plaintiff live pleading alleges a fiduciary relationship exists here because (1) Wolff and EWA held out themselves out as an attorney and law firm, respectively, and (2) took possession of funds belonging to Plaintiff [Dkt. 13 at 7-8].[13]  Defendants argue this is insufficient, specifically that (1) Plaintiff fails to allege facts that give rise to the existence of a fiduciary relationship between Plaintiff and EWA; and (2) no fiduciary relationship could possibly exist as to Plaintiff and Wolff "without some contractual or formal relationship" [Dkt. 35 at 5].  Plaintiff's first theory has no merit because no attorney–client relationship exists, thus only the contract-based theory is addressed.

### *Contract to Possess Funds*

"[A] contractual obligation does not generally give rise to a fiduciary duty."  *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 203 (Tex. 2002).  A narrow exception is where the contract itself creates a fiduciary duty.  *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 727 (5th Cir. 2015) (citing *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.)) ("A fiduciary relationship may be created by contract.").  "[C]ontrol over funds belonging to others is the classic situation in which a fiduciary duty arises."  *Id.* at 728.

---

[13] Plaintiff's live pleading alleges the following facts breach of fiduciary duty, as stated in full:

> Defendants gave Plaintiff a reasonable basis for believing that Defendants would act in Plaintiff's best interest by holding themselves out as an attorney and law firm and asserting that it would act to recover and distribute funds for Plaintiff. Defendants were subsequently authorized to and did take possession of funds belonging to Plaintiff, firmly establishing a fiduciary duty to act in Plaintiff's best interest. Then, Defendants unlawfully retained funds they were obligated to remit to Plaintiff in violation of their fiduciary duty, causing Plaintiff financial injury and providing Defendants with a financial benefit.

[Dkt. 13 at 7-8].  Plaintiff does not allege that the Contract created an attorney–client relationship, and in fact, Plaintiff repeatedly states in support of its misrepresentation claims that EWA is not a law firm and Wolff is not an attorney. Thus, Plaintiff does not allege existence of an implied attorney–client contract or a claim for breach of fiduciary duty on this basis.  *See Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2022 WL 925055, at *15-16 (E.D. Tex. Mar. 29, 2022) (finding plaintiff failed to state a claim for breach of fiduciary duty for "lack of objective indications demonstrating that Foster and Fleming intended to create an implied attorney-client relationship").

Plaintiff alleges the Contract created a duty for EWA to control and remit funds it collected on behalf of Plaintiff, given Defendants "were specifically authorized to, and did, take possession of funds belonging to Plaintiff" [Dkt. 13 at 7-8; 39 at 9-10].  Alleging a contractual obligation to remit the funds to Plaintiff is sufficient to allege existence of a fiduciary duty between Plaintiff and EWA.[14]  *See Lincoln Gen. Ins. Co.*, 787 F.3d at 729-30 ("Lincoln's breach of fiduciary duty claim against U.S. Auto relies on that specific duty governing management of funds and not a general one that would apply to all business activity").[15]  *See Zodiac 21, Inc. v. Oyo Hotels, Inc.*, No. CV 20-63-SDD-RLB, 2020 WL 6479160, at *14 (M.D. La. Nov. 3, 2020) (footnotes omitted) ("[T]he collection of Plaintiffs' money suffices to demonstrate a fiduciary relationship, since Oyo was operating as Plaintiffs' agent. Plaintiffs' allegation that Oyo failed to remit the funds to them is sufficient to establish a breach of that duty, considering that a fiduciary duty includes the duties of good faith, fair dealing, integrity, and fidelity. Plaintiffs have adequately alleged damages from that breach because, according to Plaintiffs, Oyo never remitted the money to them. Oyo's Motion to Dismiss on these grounds is denied.").[16]

---

[14] In its response to the Motion, Plaintiff states "[a]s the sole owner of EWA, it is inconceivable that Mark Wolff did not have direct knowledge of EWA's refusal to distribute the funds belonging to Plaintiff" [Dkt. 18 at 8].  Yet, no allegation of Wolff's direct knowledge can be found in the live pleading, but Plaintiff may include this allegation when it repleads its claims.  *See Daniels v. Regions Bank*, No. 4:19-CV-00416-P, 2019 WL 4735800, at *7 n.5 (N.D. Tex. Sept. 27, 2019) ("such an allegation is not found in Plaintiff's Original Petition, but the Court will grant Plaintiff an opportunity to amend his pleading to plead such an allegation.").

[15] The Fifth Circuit further explains that contractual obligations to handle claims and collect payments are specific fiduciary duties imposed by agreement of the parties:

> U.S. Auto contends that *National Plan Administrators, Inc. v. National Health Insurance Co.*, 235 S.W.3d 695 (Tex. 2007), supports its argument that it does not owe a fiduciary duty to Lincoln. Although the Supreme Court of Texas in that case found no general fiduciary duty that would have governed the plan administrator's marketing of policies to other insurers, it also recognized that the parties' contract imposed specific fiduciary duties. Notably, those included duties relating to the handling of claims. *Id.* at 702–03. The parties' agreements in this case also are the source of the fiduciary duty we have recognized, and it is a specific one that that involves U.S. Auto's conduct in "accept[ing] and maintain[ing] at all times all premiums collected and other funds relating to the" policies.

*Lincoln Gen. Ins. Co.*, 787 F.3d at 729.

[16] To be clear, the Court's conclusion is narrow, finding Plaintiff sufficiently *alleges* the Contract imposes such a duty. The Court does not reach the question of whether the Contract in fact imposes a fiduciary duty, which is a question of

***Claims Based in Fraud***

Rule 9(b) contains a "heightened pleading standard and *requires* a plaintiff to plead the circumstances constituting fraud with particularity." *MedARC, LLC v. Aetna Health Inc.*, No. 3:20-CV-3646-N-BH, 2022 WL 1057085, at *4 (N.D. Tex. Feb. 3, 2022) (citing *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010)) (emphasis added).  Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  "The Fifth Circuit interprets Rule 9(b) strictly, 'requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Galderma Lab'ys LP v. Adams*, No. 4:20-CV-00260-P, 2020 WL 10893186, at *4 (N.D. Tex. Dec. 8, 2020) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 565 (5th Cir. 2002)).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."  *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).  Claims brought under the "DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)."  *Penny v. Bos. Sci. Corp.*, No. 4:20-CV-00834, 2021 WL 781539, at *2 (E.D. Tex. Mar. 1, 2021) (quoting *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998)).

---

interpretation more appropriate for summary judgment.  *Cf. McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. App.—Dallas 2010, no pet.) (construing the parties' contract to determine if they had entered into a fiduciary relationship).

### Texas Deceptive Trade Practices Act

"The purpose of the DTPA is to 'protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.'"  *Amstadt v. U.S. Brass Corp.*, 919 S.W. 2d 644, 649 (Tex. 1996) (quoting TEX. BUS. & COMM. CODE § 17.44).  The DTPA "creates a cause of action for consumers based on '(1) the use of or employment of a false, misleading, or deceptive act or practice that is included in the "laundry list" of violations under section 17.46(b), (2) the breach of any express or implied warranty, and (3) an unconscionable action or course of action.'" *Franklin v. Apple Inc.*, No. 4:21-CV-354-ALM, 2021 WL 4989952, at *8 (E.D. Tex. Oct. 27, 2021) (quoting *Int'l Med. Ctr. Enters., Inc. v. ScoNet, Inc.*, No. 01-16-00357-CV, 2017 WL 4820347, at *7 (Tex. App—Houston [1st Dist.] Oct. 26, 2017, no pet.)).  Plaintiff's live pleading asserts seven DTPA violations, under TEX. BUS. & COM. CODE §§ 17.46 and 17.50 [Dkt. 13 at 5-6].[17]

---

[17] More specifically, Plaintiff asserts the following seven "laundry list" violations of the DTPA:

a. By knowingly and intentionally representing themselves as a law firm and an attorney, Defendants represented their services to have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. Tex. Bus. & Com. Code §17.46(a)(5);

b. By knowingly and intentionally representing themselves as a law firm and an attorney to Plaintiff and failing to disclose information to the contrary, Defendants failed to disclose information concerning goods or services which was known at the time of the transaction which the consumer would not have entered into had the information been disclosed. Tex. Bus. & Com. Code §17.46(a)(24);

c. By knowingly and intentionally representing themselves as a law firm and an attorney, Defendants represented that services were of a particular standard, quality, or grade, when they are of another. Tex. Bus. & Com. Code §17.46(a)(7);

d. By knowingly and intentionally offering to remit the payment from Schmid less Defendants' collection fee upon its collection, when Defendants had no intention of remitting the payment, Defendants advertised goods or services with intent not to sell them as advertised. Tex. Bus. Com. Code §17.46(a)(9);

e. By knowingly and intentionally holding themselves out as a law firm and an attorney, and by knowingly and intentionally agreeing to remit the Schmid payment upon collection with no such intention of actually remitting the money, Defendants engaged in an unconscionable course of action in trade and commerce. Tex. Bus. & Com. Code §17.50(a)(3);

The elements of a DTPA claim are (1) the plaintiff is a consumer;[18] (2) the defendants either: (a) engaged in false, misleading, or deceptive acts specifically enumerated as a "laundry-list" provision of the DTPA or for breach of a warranty, (b) engaged in an unconscionable action or course of action, or (c) violated a "tie-in" statute; and (3) the violation or unconscionable action was a producing cause of the plaintiff's injury.  *See Amstadt*, 919 S.W.2d at 649; *Franklin*, 2021 WL 4989952, at *8; *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 822 (Tex. 2012).

Defendants primarily urge Plaintiff's DTPA claims should be dismissed because this is merely a breach of contract case that does not give rise to any DTPA claim [Dkt. 15 at 3].  More specifically, they argue Plaintiff's only complaint is Defendants' failure to remit to Plaintiff its share of the funds collected pursuant to the Contract, and that "a violation of a written agreement" is "not a violation of the DTPA" [Dkt. 35 at 4-5].  Plaintiff rejoins that contractual relationships can give rise to DTPA claims [Dkt. 18 at 11-12].  To be clear, "[a]n allegation of a breach of contract, without more, does not amount to a false, misleading, or deceptive act under the DTPA." *Malsom v. Match.com, L.L.C.*, 540 F. App'x 412, 415 (5th Cir. 2013).  By contrast, an individual may maintain claims for both breach of contract and a violation of the DTPA when the plaintiff alleges not only a breach of contract, but also that the other party "never intended" to fulfill the contract in the first place.  The Texas Supreme Court in *Chapa* explained that it "long ago abandoned the position that procuring a contract by fraud was simply another contract dispute."

---

f. By knowingly and intentionally offering to remit the payment from Schmid less Defendants' collection fee when Defendants had no intention of remitting the payment, Defendants breached the implied warranty of good faith and fair dealing. Tex. Bus. & Com. Code §17.50(a)(2); and
g. By knowingly and intentionally offering to remit the payment from Schmid less Defendants' collection fee when Defendants had no intention of remitting the payment, Defendants breached their expressed warranties. Tex. Bus. & Com. Code §17.50(a)(2).

[Dkt. 13 at 6].
[18] A "consumer" under the DTPA is defined as one who "seeks or acquires by purchase or lease, any goods or services" TEX. BUS. & COM. CODE § 17.45(4).  "Services" are defined as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."  § 17.45(2).

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 306 (Tex. 2006).  While breach of a contract alone does not give rise to a claim under the DTPA, other claims for misrepresentation are actionable if they allege deceptive or fraudulent acts in addition to the breach of contract.  *Id.* at 305.  Misrepresentations may violate the DTPA even where the promises are "subsumed into a contract" if there is a separate act in violation of the DTPA, and "the liability of the defendant on the contract does not absolve it from liability in tort damages too."  *Id.*

Defendants' Supplement seeks to distinguish *Chapa*, urging "[i]n this case, Plaintiff does not complain about the initial contract being fraudulently obtained, that Defendant, EWA, did not perform under the contract (Plaintiff admits that EWA did perform as contracted under the contract by collecting on the account), spoliation, or any other post-contract tort" [Dkt. 35 at 4].  The Court disagrees – the live pleading plainly seeks (but falls short, as discussed *infra*) to allege fraudulent inducement based on misrepresentations and Defendants' failure to perform.[19]  Moreover, at the motion to dismiss stage, Plaintiff is permitted to plead alternative grounds for relief, and the potential for double recovery does not show failure to state a DTPA claim as a matter of law.  *See Latham v. Burgher*, 320 S.W.3d 602, 611 (Tex. App.—Dallas 2010, no pet.) (citing *Chapa*, 212 S.W.3d at 303) ("Although he may plead and try more than one theory of liability, he may recover under only one.").[20]

---

[19] No allegation of spoliation is found; however, this is not a requirement for alleging a DTPA claim separate from a breach of contract claim, as the *Chapa* court explains.  *See Chapa*, 212 S.W.3d at 306.  All that is required in addition to allegations of breach to state a separate DTPA claim is circumstantial evidence of intent to defraud or make a misrepresentation; in *Chapa*, the court discussed spoliation of evidence as circumstantial evidence of intent to defraud.  *See Porter-Garcia v. Travis L. Firm, P.C.*, 564 S.W.3d 75, 89 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *Chapa*, 212 S.W.3d at 305) (cleaned up) ("Breach 'combined with slight circumstantial evidence' may demonstrate that the promisor intended to defraud or had knowledge of the falsity of her representations when made.").

[20] The Court under Rule 12(b)(6) looks to whether a plaintiff has stated a claim upon which relief can be granted, not whether those claims may lead to double recovery at the end of the litigation.  Pleading alternative theories of recovery is explicitly contemplated and permitted by the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 18(a).  A potential double recovery problem down the road is simply not an appropriate ground to dismiss Plaintiff's claims at this juncture.  *See, e.g., Bergeron v. Ochsner Health Sys.*, No. 17-519, 2017 WL 3648451, at *10 (E.D. La. Aug. 24, 2017).  And to the extent Defendants argue they did not actually engage in any misrepresentation, that is a question

Notwithstanding, the Court finds Plaintiff has failed to properly state a DTPA claim.  As set forth earlier, claims sounding in fraud must also comply with the heightened pleading standard imposed by Rule 9(b).  *See, e.g.*, *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) ("Even if this were enough to satisfy Rule 12(b)(6), it is certainly not sufficient to satisfy the heightened particularity requirements of Rule 9(b)."). Plaintiff alleges that "[i]n its solicitation, EWA held itself out as a law firm, and Defendant Mark Wolff held himself out as an attorney" [Dkt. 13 at 3].  This pleads the "what" (the content of the misrepresentation), but Plaintiff has not alleged sufficient facts for the "who," "when," "where," or "how."  *See Carr Enters. Inc. v. Acadia Ins. Co.*, No. 6:21-CV-00129, 2022 WL 965031, at *6 (E.D. Tex. Mar. 30, 2022) (citation omitted) (quoting *Franklin*, 2021 WL4989952, at *8-9) ("While plaintiff alleges the 'contents of the false representations,' plaintiff does not allege 'the time, place,' or the 'identity of the person making the representation and what he obtained thereby.' Without these facts, it is unclear how defendant took advantage of plaintiff's lack of knowledge. Plaintiff's claim does not meet the pleading standard.").  The factual allegations are ambiguous as to the "who" – the live pleading refers to "Defendants" collectively when addressing the solicitations and alleged holding out by EWA and/or Wolff [See Dkt. 13 at 3-4].  Plaintiff's pleading as to the DTPA "laundry list" violations do not satisfy Rule 9(b) for the same reason – each claim references Defendants collectively and does not identify who made the representations or offers.  Nor are the factual allegations for the "when" and "where" pleaded with specificity.  *See Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004) ("alleging that a defendant made false statements during 'negotiations leading up to' an event for the purpose of inducing someone to enter into a contract

---

of the merits; when considering a motion to dismiss, the Court takes Plaintiff's factual allegations as true.  *See M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 771 (S.D. Tex. 2010) (citing *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)) ("the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim.").

with him—without any additional factual support—does not allege the particular time and place of the false representations, nor does it set forth any 'specific facts' to support the inference of fraud. In short, it does not satisfy Rule 9(b)"). More is needed to satisfy Rule 9 at the pleading stage.

### Fraud and Fraudulent Inducement

"Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations." *Bates Energy*, 361 F. Supp. 3d at 660.  Although fraudulent misrepresentation and fraudulent inducement are separate causes of action, both have the same elements.  *Id.*  These elements are "(1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury."  *Id.* (citing *Jacked UP, LLC v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017)).  Specific to fraudulent inducement, the plaintiff must also prove the existence of a contract to state a claim.  *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012).

Defendants argue Plaintiff fails to state a claim for fraud or fraudulent inducement beyond pleading bare conclusions as to the required elements.  More specifically, Defendants urge Plaintiff alleges no facts for the assertion that "'Defendants further acted with dishonest purpose and intent to deceive' or that Defendants had no intention of performing under the terms of the contract" [Dkt. 15 at 3].  They also argue Plaintiff has not pleaded facts that allege Defendants "knowingly falsely stated that they would 'recover funds and distribute the recovered funds to Plaintiff'" [Dkt. 15 at 4].

The live pleading alleges:

> Defendants asserted that EWA would recover funds and distribute the recovered funds to Plaintiff. At the time they were made, Defendants knew their assertions were false. The false assertions were made to induce Plaintiff into a contract for debt collection services. Plaintiff relied on Defendants' false assertions, to their manifest detriment, in the amount of $24,000.

[Dkt. 13 at 9].  Each required element for fraudulent misrepresentation and fraudulent inducement are stated; however, Plaintiff once again stumbles with respect to particularity.  "In federal court, fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): In allegations alleging fraud, a party must state with particularity the circumstances constituting fraud or mistake." *Edge Adhesives, Inc. v. Sharpe Concepts, LLC*, No. 4:15-CV-405-O, 2015 WL 12743618, at *3-4 (N.D. Tex. Aug. 31, 2015) (quoting *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 836 (S.D. Tex. 2011)) (cleaned up).[21]

Plaintiff's allegations do not allege the who, what, where, when, how to sufficiently plead a claim for fraud.  Plaintiff does not actually identify who made a material misrepresentation on behalf of EWA nor when it was made.  The live pleading alleges only that sometime after Schmid failed to pay Plaintiff in October 2019, Defendants "thereafter" solicited business from Plaintiff, resulting in the Parties entering the Contract on February 19, 2020 [Dkt. 13 at 3].  No speaker or time is identified for these allegations.  *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 795 (5th Cir. 2007) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068-69 (5th Cir. 1994)) ("[courts] look to ensure that the identity of the speaker along with

---

[21] Also different from Plaintiff's DTPA claims, common law fraud and fraudulent inducement require pleading the intent or knowledge of Defendants.  As to intent, however, recall that Rule 9(b) "relaxes the particularity requirement for conditions of the mind."  *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (quoting *Tuchman*, 14 F.3d at 1068).  "Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent."  *Id.* at 385.  Ultimately, whether Defendants in fact had the requisite intent is more appropriate for consideration at summary judgment, as "[i]ntent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given their testimony."  *Sloggett*, 2021 WL 5609982, at *7.

the particulars of time place and content are alleged.").   The live pleading similarly lacks specificity as to what representation was actually made, alleging only that Plaintiff entered into the contract "as a direct result of Defendants' deceptive solicitations and enticements" [Dkt. 13 at 4]. No detail can be found as to the "what" of any deceptive solicitation or enticement.   Plaintiff addresses Rule 9(b) in its responses only to note Defendants do not affirmatively mention the pleading requirements of Rule 9; however, this does not obviate Plaintiff's obligation to plead the circumstances of fraud with particularity.   Plaintiff does not point to any allegation that it satisfies the heightened standard.   Explained *supra*, Rule 9(b) is a pleading requirement imposed upon Plaintiff by the Federal Rules.   Plaintiff has failed to sufficiently plead those claims to which Rule 9(b) applies, including DTPA, fraud, and fraudulent inducement.

## CONCLUSION

Based on the foregoing, Defendants Edward Wolff & Associates, LLC and Mark Wolff's Motion to Dismiss Plaintiff's Third Amended Complaint [Dkt. 15] is hereby **GRANTED IN PART** and **DENIED IN PART**.  Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claims against Defendant Mark Wolff and Plaintiff's claims against EWA for alleged violations of the DTPA, fraud, and fraudulent inducement.   These claims are **DISMISSED WITHOUT PREJUDICE**.  Defendants' Motion is **DENIED** as to Plaintiff's claims against EWA for breach of contract, violations of the TTLA, and conversion.   It is further **ORDERED** that Plaintiff has fourteen days from the date of this Order to amend its complaint as to all claims that have been dismissed without prejudice in this Order.[22]   Plaintiff may notify the Court that it does not seek to

---

[22] Having apprised Plaintiff of its pleading deficiencies, the Court will permit Plaintiff the opportunity to amend its complaint.  *See Carr Enterprises*, 2022 WL 965031, at *6 ("The motion to dismiss this claim is granted. Plaintiff, however, is granted leave to amend within 21 days if it believes that can plausibly plead such a claim with the required specificity."); *Tsao v. Ferring Pharms., Inc.*, No. 4:16-CV-01724, 2017 WL 746451, at *12 (S.D. Tex. Jan. 4, 2017) ("It is recommended that Plaintiff be permitted to amend her Complaint with respect to her claims for the DTPA

replead the claims dismissed without prejudice herein.  Upon filing of any amended complaint, the

Court may amend the Scheduling Order as needed, and as agreed upon by the Parties.


**SIGNED this 30th day of September, 2022.**


_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

'laundry list violations.'"), *report and recommendation adopted*, No. 4:16-CV-1724, 2017 WL 749009 (S.D. Tex. Feb. 24, 2017); *Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2010 WL 3422873, at *17 (N.D. Tex. Aug. 26, 2010) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."). While Plaintiff's live pleading is its third amended complaint, this is Plaintiff's first opportunity to amend after the Court has considered the alleged pleading deficiencies raised by Defendants and found valid by the Court. To be clear, Plaintiff's amended complaint must address each of the specific deficiencies identified herein. *See id.* ("A plaintiff should be given the opportunity to amend a Complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based.").